UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| JOSEPH "JOE" HAGAN,<br><br>        Plaintiff,<br><br>v.<br><br><br>BLACK DIAMOND EXPERTS, LLC and<br>DANIEL L. JAMES,<br><br>        Defendants. | **MEMORANDUM DECISION &<br>ORDER GRANTING DEFENDANTS'<br>MOTION FOR JUDGMENT ON THE<br>PLEADINGS; GRANTING<br>PLAINTIFF LEAVE TO FILE<br>AMENDED COMPLAINT; &<br>DENYING AS MOOT MOTION TO<br>STAY**<br><br><br>Case No. 4:25-cv-00088-AMA-PK<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on a Motion for Judgment on the Pleadings filed by

Defendants Black Diamond Experts, LLC ("Black Diamond Experts") and Daniel L. James

(collectively, "Black Diamond").[1] Also before the Court is the Parties' Stipulated Motion to

Stay.[2] For the reasons discussed below, the Court grants Defendants' Motion for Judgment on the

Pleadings. In doing so, the Court will grant Plaintiff leave to file an amended complaint and will

deny as moot the Parties' Stipulated Motion to Stay.

## **BACKGROUND**[3]

This case concerns the alleged financial exploitation of a vulnerable adult. Plaintiff

---

[1] ECF No. 23, filed October 28, 2025.

[2] ECF No. 36, filed July 15, 2026.

[3] The facts below are taken from the Complaint and the documents attached thereto. ECF No. 1.
For the purposes of the Motion at issue, the Court will treat the well-pleaded allegations in the
Complaint as true.

Joseph "Joe" Hagan is 86 years old.[4] In October of 2021, when one of Mr. Hagan's electrical outlets stopped working, Mr. Hagan called Defendant Black Diamond Experts,[5] who represented that it was necessary to replace the entire circuit panel.[6] Black Diamond Experts charged Mr. Hagan $996 to do so on October 18, 2021, and Mr. Hagan gave his credit card information, which Black Diamond Experts kept on file.[7]

On October 20, 2021, Black Diamond Experts represented that Mr. Hagan's HVAC system was broken and needed to be replaced.[8] Without disclosing the cost of the repairs to Mr. Hagan, Black Diamond Experts forged Mr. Hagan's signature on the invoice and automatically charged his credit card for $6,728.[9]

Around February of 2022, Mr. Hagan experienced severe health issues and was, after hospitalization, released to a rehabilitation center, where he stayed for the next eighteen months.[10] While Mr. Hagan was away from home, a neighbor noted a leak under Mr. Hagan's sink, about which Mr. Hagan called Black Diamond Experts.[11] Black Diamond Experts then performed unnecessary work by installing two new faucets and charged Mr. Hagan's credit card for $1,469.70, again forging his signature on the invoice.[12]

---

[4] *Id*. ¶ 1.

[5] At times, the Complaint refers specifically to Defendant Black Diamond Experts. At others, the Complaint refers simply to "Defendant." There are two Defendants in this case, and it is difficult for the Court to determine who Mr. Hagan means by "Defendant." However, it seems that "Defendant" refers to Black Diamond Experts. Thus, the Court will treat "Defendant" with respect to these allegations as referring to Black Diamond Experts. When the Complaint refers to "Defendants," the Court will use "Black Diamond" to refer to both Defendants collectively.

[6] *Id*. ¶¶ 14–16.

[7] *Id*. ¶¶ 16–17.

[8] *Id*. ¶ 18.

[9] *Id*. ¶¶ 18–19.

[10] *Id*. ¶¶ 20–21.

[11] *Id*. ¶¶ 22–23.

[12] *Id*. ¶¶ 25–27.

On June 20, 2022, Black Diamond Experts—unnecessarily and without Mr. Hagan's knowledge or consent—removed and installed Mr. Hagan's water heater.[13] Black Diamond Experts charged Mr. Hagan's credit card for $5,850.90.[14]

At some other point, Black Diamond Experts represented to Mr. Hagan that the polybutylene pipes in his home were illegal and would need to be replaced.[15] Mr. Hagan, however, chose to wait to replace the pipes.[16] Then, when Mr. Hagan returned home from the rehabilitation center in May of 2023 to find that the leak under his sink had not been fixed, he again called Black Diamond Experts.[17] Black Diamond Experts again represented that the polybutylene pipes must be replaced.[18] Mr. Hagan consented to the replacement around August 18, 2023.[19] Without disclosing the cost, Black Diamond began replacing the pipes and charged Mr. Hagan's card for $14,477.20.[20] While re-piping, a Black Diamond Experts' employee represented that the re-piping could not be finished without removing and installing the duct work for the HVAC, which would require replacing the entire HVAC unit.[21] Black Diamond then did so, charging Mr. Hagan's credit card $11,503.05.[22]

In the winter of 2023, Mr. Hagan discovered that the new HVAC system did not work.[23] Another contractor inspected Black Diamond Experts' work and discovered that none of the re-

---

[13] *Id.* ¶ 28.
[14] *Id.* ¶¶ 28–29.
[15] *Id.* ¶¶ 30–31.
[16] *Id.* ¶ 32.
[17] *Id.* ¶¶ 33–35.
[18] *Id.* ¶ 36.
[19] *Id.* ¶¶ 37.
[20] *Id.* ¶¶ 38–40.
[21] *Id.* ¶ 41.
[22] *Id.* ¶ 43.
[23] *Id.* ¶ 48.

piping was compliant with the local building code.[24] Another plumber also inspected Black Diamond Experts' work and determined that the plumbing was also not up to code and that the HVAC duct work and unit did not need to be removed and replaced as Black Diamond had represented.[25]

Mr. Hagan initiated the instant action on July 10, 2025.[26] Black Diamond filed its Motion for Judgment on the Pleadings on October 28, 2025.[27] Mr. Hagan filed an Opposition on November 25, 2025,[28] to which Black Diamond replied on December 23, 2025.[29]

## **LEGAL STANDARD**

Courts apply the same standard in reviewing a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as they do in reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[30] Accordingly, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[31] As with a Rule 12(b)(6) motion, in construing a plaintiff's complaint, the Court will assume the truth of any well-pleaded facts and draw all reasonable inferences in the light most favorable to the plaintiff.[32] "Documents attached to the pleadings . . . are subject to full consideration in a court's review of a Rule 12(c) motion."[33] Furthermore, as relevant here, "[t]he dismissal of a complaint .

---

[24] *Id.* ¶ 49.
[25] *Id.* ¶ 51.
[26] *Id.*
[27] ECF No. 23.
[28] ECF No. 24.
[29] ECF No. 28.
[30] *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1302–03 (10th Cir. 2021).
[31] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[32] *See Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011).
[33] *United States v. Zazi*, 356 F. Supp. 3d 1105, 1114 (D. Colo. 2018).

. . for failing to satisfy the requirements of [Federal Rule of Civil Procedure] 9(b) is treated as a dismissal for failure to state a claim[.]"[34]

## DISCUSSION

Black Diamond moves for judgment on the pleadings on the grounds that (1) Mr. Hagan has failed to plead the alleged fraud with particularity as required by Federal Rule of Civil Procedure 9(b) and (2) Mr. Hagan has failed to meet the elements required to establish a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Before reaching the substance of the arguments, the Court must address its concerns regarding the Opposition Mr. Hagan's counsel filed on November 25, 2025.[35] As Black Diamond noted, the Opposition appears to cite to "caselaw potentially produced by artificial intelligence."[36] For example, the Opposition cites to *Weatherly v. A.O. Smith Corporation*, 841 F. Supp. 2d 913, 920 (D.S.D. 2012),[37] but the Court has been unable to locate this case as cited on Westlaw, which suggests that this citation may be a hallucination of artificial intelligence. Citations to non-existent cases "undermine the integrity of court filings and evince a lack of diligence under Federal Rule of Civil Procedure 11(b)."[38] "A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying,

---

[34] *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1274 (10th Cir. 2023).
[35] ECF No. 24.
[36] ECF No. 28 at 9.
[37] ECF No. 24 at 17.
[38] *Berg v. United Airlines, Inc.*, No. 1:23-cv-01766-NYW-SBP, 2025 WL 3177804, at *3 (D. Colo. Sept. 8, 2025), *report and recommendation adopted*, No. 23-cv-01766-NYW-SBP, 2025 WL 3033488 (D. Colo. Oct. 30, 2025).

or reversing existing law, or for establishing new law. An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system."[39]

The Court takes seriously allegations of the improper use of artificial intelligence. Nonetheless, the Court concludes that, given the unusual circumstances described in the Stipulated Motion to Stay regarding Mr. Hagan's counsel's asserted "incapacitation,"[40] further pursuit of this issue at this time would not be fruitful. Generally, however, the Court admonishes counsel to be vigilant with respect to artificial intelligence. If any improper use of artificial intelligence is determined to have occurred in the future, sanctions may be imposed.

Turning, then, to the substance of the instant Motion, the Court will first address Mr. Hagan's federal causes of action before turning to the state law claims.

A.      FEDERAL CLAIMS

Mr. Hagan's Complaint asserts two federal causes of action: (1) Violation of RICO, 18 U.S.C. § 1962(c), and (2) Mail and Wire Fraud in Violation of 18 U.S.C. § 1341.[41]

Under RICO, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and . . . recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]"[42] The elements of a civil RICO claim are as follows: "(1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity."[43]

---

[39] *Von Neumann v. Wells Fargo Bank N.A.*, No. 25-cv-00509-LTB-RTG, 2025 WL 2211655, at *2 (D. Colo. Mar. 17, 2025) (quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023)).

[40] *See* ECF No. 36.

[41] ECF No. 1 ¶¶ 62–92. The Court notes that while 18 U.S.C. § 1341 contemplates mail fraud, it is 18 U.S.C. § 1343 that contemplates wire fraud.

[42] 18 U.S.C. § 1964(c).

[43] *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (citing 18 U.S.C. § 1962(a), (b), & (c)).

"'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as any 'act which is indictable' under federal law and specifically includes mail fraud, wire fraud and racketeering."[44] "These underlying acts are 'referred to as predicate acts, because they form the basis for liability under RICO.'"[45]

Here, Mr. Hagan has asserted a RICO claim against Black Diamond under 18 U.S.C. § 1962(c). Because 18 U.S.C. § 1962(c) "require[s] allegations of racketeering activity, [the Court] first determine[s] whether [Mr. Hagan] sufficiently alleged predicate acts that can serve as a basis for RICO liability."[46]

The Complaint alleges that Black Diamond engaged in the predicate acts of mail and wire fraud. Mr. Hagan must, to establish the predicate act of mail fraud, allege "(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme."[47] "The elements of wire fraud are very similar, but require that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud."[48] Furthermore, "the common thread among . . . these crimes is the concept of 'fraud.'"[49] Actionable fraud consists of the following:

> (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury.[50]

---

[44] *Id.*

[45] *Id.* (quoting *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1102 (10th Cir. 1999)).

[46] *Id.* at 1263.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

"Failure to adequately allege any one of the nine elements is fatal to the fraud claim."[51]

Federal Rule of Civil Procedure 9(b) "applies to claims of mail and wire fraud."[52] As Rule 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Rule 9(b)'s purpose is to afford [a] defendant fair notice of a plaintiff's claims and the factual grounds supporting those claims."[53] "[T]o adequately plead mail and wire fraud under Rule 9(b), [a plaintiff] must allege the time, place and contents of the false representations, the identity of the party making the false statements, and the consequences of the false representations."[54] In other words, a complaint must state the "who, what, where, when, and how" of the alleged fraud.[55] Additionally, "[a] plaintiff asserting fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme."[56] If a complaint's allegations, "when *taken as a whole*" are sufficiently particularized, the complaint satisfies Rule 9(b)'s requirements.[57]

At present, the Complaint's allegations, when taken as a whole, are not sufficiently particular as required under Rule 9(b). While the Court acknowledges that the Complaint does provide some specific dates, the Complaint fails to provide sufficient factual detail regarding, in particular, the "who" and "where" of the alleged fraud. The Complaint cursorily asserts that on certain specific dates, misrepresentations were made "via phone call, text message, email, and

---

[51] *Id.*

[52] *Id.*

[53] *Clinton*, 63 F.4th at 1277 (citation modified).

[54] *Id.* (citation modified).

[55] *Id.*

[56] *Tal*, 453 F.3d at 1263 (citation modified).

[57] *Clinton*, 63 F.4th at 1280 (emphasis in original) (citation modified).

the internet[,]"[58] but the Complaint does not set forth facts to support this. For example, it is alleged that in October of 2021, Black Diamond Experts falsely stated that Mr. Hagan's circuit panel needed to be replaced. The "where" of this representation is entirely unclear. Was the representation made to Mr. Hagan on the phone, in person, or via email? Was this representation made in writing or orally? Without such information, it is difficult to determine the "who." Did a specific employee of Black Diamond Experts make this representation? Indeed, the Complaint often refers simply to "Defendant," and the Court cannot clearly ascertain whether this refers to Black Diamond Experts or Defendant Daniel L. James—from what the Court can surmise, there do not appear to be any allegations specifically setting forth Mr. James's participation in the alleged scheme. The Court has similar questions for the other alleged misrepresentations it can glean from the Complaint.

Furthermore, it is difficult at times to parse out precisely what the Complaint is asserting to be a misrepresentation. The Court acknowledges that attached to the Complaint are several invoices. The Complaint asserts that Black Diamond sent these invoices to Mr. Hagan via mail and email,[59] but it also asserts that Black Diamond Experts performed the work at issue in these invoices without disclosing the cost to Mr. Hagan and forged Mr. Hagan's signature in order to charge his credit card automatically. This raises the question of "when" Mr. Hagan received these invoices. And that raises the question of "what" misrepresentation these invoices contained at that time. Assuming Mr. Hagan's forged signature could constitute a misrepresentation, was Mr. Hagan sent a copy of the invoice containing his own forged signature? If not, what other, if any, specific misrepresentations did these invoices contain?

---

[58] ECF No. 1 ¶ 80.
[59] *Id.* ¶ 85.

Overall, the allegations in the Complaint are too vague and cursory to satisfy the requirements of Rule 9(b). Mr. Hagan has thus failed to state a claim for mail and wire fraud. In turn, where these predicate acts have not been sufficiently pleaded, Mr. Hagan has failed to state a claim under RICO. The Court will dismiss these claims without prejudice.[60]

**B.      STATE LAW CLAIMS**

Black Diamond urges the Court to, upon dismissal of the federal claims, dismiss the remaining claims arising under state law for lack of jurisdiction. The Complaint bases this Court's jurisdiction in federal question, 28 U.S.C. § 1331,[61] and asserts that this Court has supplemental jurisdiction over Mr. Hagan's state law claims pursuant to 28 U.S.C. § 1367.[62] "Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction.'"[63] "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[64] Here, as the Court has dismissed the federal causes of action, it will decline to exercise supplemental jurisdiction over the remaining state claims at this time. These claims are dismissed without prejudice.[65] Mr. Hagan may reassert these claims in filing an amended complaint, leave for which the Court grants below.

---

[60] "A claim dismissed under Rule 12(c) may be dismissed with or without prejudice, as would be otherwise warranted." *Luizzi v. State Farm Mut. Auto. Ins. Co.*, 815 F. Supp. 3d 1220, 1228 n.2 (D. Colo. 2025). "A dismissal with prejudice is appropriate where a complaint fails to state a claim . . .  and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). It does not seem to the Court that amendment here would be futile. Thus, a dismissal without prejudice is appropriate.

[61] ECF No. 1 ¶¶ 1–2.

[62] *Id.* ¶ 3.

[63] *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011).

[64] *Id.*

[65] *Birdwell v. Glanz*, 790 F. App'x 962, 964 (10th Cir. 2020) (unpublished) (indicating that where a court declines to exercise supplemental jurisdiction over state law claims, those claims should be dismissed without prejudice).

## C.    LEAVE TO AMEND

"A court need not grant leave to amend when a party fails to file a formal motion."[66] While Mr. Hagan seeks leave to amend in his Opposition,[67] no formal motion seeking such leave has been filed. Nonetheless, "the grant or denial of an opportunity to amend is within the discretion of the District Court,"[68] and Federal Rule of Civil Procedure 15(a)(2) instructs that the Court "should freely give leave [to amend] when justice so requires." The Court's dismissal is based substantially on Mr. Hagan's failure to comply with Rule 9(b). "[W]hen a plaintiff fails to comply with [R]ule 9(b), 'the pleader usually will be permitted or have the right to amend to bring the pleading into compliance with the requirements of Rule 9(b).'"[69] Therefore, the Court finds it appropriate here to exercise its discretion to grant Mr. Hagan leave to amend.[70]

## ORDER

For the reasons discussed above, the Court orders as follows:

1.   Defendants' Motion for Judgment on the Pleadings (ECF No. 23) is **GRANTED**.

Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**.

---

[66] *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021).

[67] ECF No. 24 at 22.

[68] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[69] *S2 Automation LLC v. Micron Tech., Inc.*, 281 F.R.D. 487, 498 (D.N.M. 2012) (quoting 2 J. Moore, *Moore's Federal Practice*, § 9.03[4], at 9–33 (3d ed. 2011)).

[70] *See Gallardo v. Bd. of Cnty. Comm'rs, Kearny Cnty. Kan.*, 857 F. Supp. 783, 787 (D. Kan. 1994) ("On 12(c) motions, courts may grant leave to amend[.]"); *Heisinger v. Vill. of Tularosa*, No. 22-cv-0366 KG/GBW, 2023 WL 2601262, at *3 (D.N.M. Mar. 22, 2023) (granting the defendants' motion for judgment on the pleadings "based on the sufficiency of the pleading," dismissing the complaint without prejudice, and providing the plaintiffs with an opportunity to amend the complaint); *Est. of Hunter by Hunter v. Uintah Cnty.*, No. 2:16-cv-1248-TS, 2017 WL 2869423, at *2 (D. Utah July 5, 2017) (granting the defendant's motion for judgment on the pleadings, dismissing claim without prejudice, and allowing the plaintiff an opportunity to amend the complaint); *Wight v. Downing*, No. 1:06-cv-107-TS, 2008 WL 303918, at *3, 5-6 (D. Utah Jan. 31, 2008) (granting in part the defendants' motion for judgment on the pleadings, dismissing claims without prejudice, and providing the plaintiff with an opportunity to amend the complaint).

2. **Within 120 days of this Order**,[71] Plaintiff may file an Amended Complaint curing the deficiencies identified in this Order. Failure to do so will result in the Court entering judgment and closing this case.

3. The Parties' Stipulated Motion to Stay (ECF No. 36) is **DENIED AS MOOT**.

DATED this 23rd day of July 2026.         BY THE COURT:

Ann Marie McIff Allen
United States District Judge

---

[71] In setting this deadline, the Court takes into account the 90-day stay requested in the Stipulated Motion to Stay. ECF No. 36. The relief requested in that Motion is, therefore, moot.